of being identified, do not pass to an assignee. The identity and ownership of the money in controversy being conceded, there is but one thing for the court to do in the exercise of its jurisdiction over fiduciary relations, and that is to direct the funds so held by the bank to be paid over to the plaintiffs.

Judgment ordered for the plaintiffs, without costs. All concur.

---

(64 App. Div. 248.)

### PATRONS OF INDUSTRY FIRE INS. CO. v. HARWOOD.

(Supreme Court, Appellate Division, Third Department. September 4, 1901.)

INSURANCE—MUTUAL COMPANY—LIABILITY OF MEMBER AFTER CANCELLATION OF POLICY.

> Laws 1892, c. 690, § 267, provides that every member of a mutual insurance company shall pay his proportionate share of all losses, and also a reasonable sum for expenses; and section 268 authorizes the directors to estimate the sum necessary to pay all losses, damages, and expenses for the current year, and to assess the same. Section 274 allows any member to withdraw at any time, by 10 days' notice, and paying his share of all claims, existing against the company, and surrendering his policy. Defendant became a member of a mutual fire insurance company organized under these laws, and, after having his policies canceled, paid an assessment for a loss sustained before the cancellation. The money paid on such assessment was partly used to defray the company's expense incurred after the date of the assessment. Another assessment was levied to pay the deficit on the loss, and, on defendant's refusal to pay, action was brought. *Held*, that defendant, by the cancellation of his policies and settlement with the company, ceased to be a member, and was not liable for any further assessments connected with such losses.

Appeal from Franklin county court.

Action by the Patrons of Industry Fire Insurance Company against Watson H. Harwood. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Charles A. Burke, for appellant.
John I. Gilbert, for respondent.

CHASE, J. The plaintiff is a co-operative insurance corporation organized pursuant to article 9 of chapter 690 of the Laws of 1892, known as the "Insurance Law." In November, 1897, the defendant was the holder of two policies of insurance issued by said company pursuant to said statute and the by-laws of said company. On the 3d day of November, 1897, the defendant received a notice of assessment dated November 1, 1897, on each of the policies held by him. The amount of the assessments was $9.78 and $26.45, respectively. He went to the office of the secretary of the company on November 5, 1897, and, not finding any one in charge of the office, returned, and on November 8th again went to said office. The secretary was then absent, but the office was in charge of the secretary's son. The defendant told the son that he surrendered his policies and delivered the same to him, and left them with him,

and there was then indorsed on each the following words: "This policy returned for cancellation this 8th day of Nov., 1897, at 3 p. m." The defendant then paid the amount of the assessments, and he testifies that the son said "there might be some figuring as to the rebate, but he was pressed; wished I would let it go; father would settle that." On the 18th day of November, 1897, said policies were canceled pursuant to statute and said by-laws, and the secretary of the company wrote across each of said policies, "Canceled Nov. 18, 1897," and signed such statement as such secretary as follows: "C. W. Pearl, Secretary." The defendant paid all assessments against him to and including the said 18th day of November, 1897. On the 17th day of November, 1897, one Wilson, a policy holder of said company, suffered a loss by fire. On the 13th day of January, 1898, said company caused an assessment to be made for the amount of the Wilson loss, and also a loss to one White, the date of which does not appear. The defendant was included among the persons so assessed. The secretary of the company notified the defendant of the amount assessed to him. The assessment not being paid, on the 12th day of November, 1898, the attorney of the plaintiff wrote a letter to the defendant as follows:

"I have a claim against you for collection in favor of the Patrons of Industry Fire Insurance Company of Franklin County, New York. The company, as you know, has quit issuing policies, and some may think it a hardship to pay; but it is in condition to enforce payment, and, if suit is brought, 50 % is added. I do not desire to bring an action against you, but will be obliged to do it if the account is not paid. They direct me to push it. The amount against you personally is $5.86; as administrator, etc., $13.35. Interest on both from February 13th, 1898."

Thereafter the defendant called on the attorney for the plaintiff and told him that he wanted a receipt that would clear him from further annoyance from the company, and paid him the amount of the assessment, with interest, and the attorney gave him a receipt in full therefor. The material part of the assessment of January 13, 1898, is as follows:

Loss of Bro. Edward S. White.................................. $  100 00
Loss of Bro. T. R. Wilson.....................................   1,189 00
And expense of company.

Your assessment on policy No. 246, on $850.00, is............... $    5 95
Cancellation fee .............................................        25

    Total ................................................. $    6 20
The amount of return premium to the credit of said policy is.....      34

    Balance due........................................ $    5 86

Your assessment on policy No. 639, on $2,300.00, is.............. $   15 10
Cancellation fee .............................................        25

    Total ................................................. $   15 35
The amount of return premium to the credit of said policy is.....     2 00

    Balance due........................................ $   13 35

There is no evidence of any unpaid expenses existing against the company at the time the defendant's policies were canceled. Only

part of the persons included in the assessment of the 13th of January, 1898, paid their assessments. Expenses were incurred after January 13, 1898, and, although the assessment was for the purpose of paying losses, the officers of the company paid from the amount collected from said assessment the expenses incurred after the date of said assessment; and the balance so collected was paid first to said White, and next to said Wilson, leaving unpaid to Wilson between six and seven hundred dollars. Subsequently Wilson sued the plaintiff for the amount remaining unpaid to him, and obtained judgment against the plaintiff for the sum of $694.02. Subsequently a payment was made thereon, leaving due to him about the sum of $500, and said company on the 25th day of November, 1899, made an assessment "to pay judgment against company in favor of Thaddeus R. Wilson of about $700 for loss by fire, attorney's fees, and expense of collecting assessments and closing up the affairs of the company." The defendant was included in this assessment. He refused to pay the amount so assessed against him, and this action was brought to recover the amount of such assessment.

Section 267 of the insurance law provides:

"Every person insured in and by any such corporation shall give his undertaking in such form as the corporation may prescribe to pay his pro rata share to the corporation of all losses or damages sustained by any member thereof. * * * He shall also pay such reasonable sum for policies and expenses and within such time as may be required by the by-laws. * * *"

Section 268 of said law provides:

" * * * If the directors or executive committee deem it to be for the interests of the corporation, they may make an estimate of such sums as in their judgment will be necessary to pay all losses, damages, and expenses for the current year * * * and proceed to assess, levy, and collect the same of the members of the corporation. * * *"

Section 274 of said law provides:

"Any member of any such corporation may withdraw therefrom at any time by ten days' notice in writing to the secretary and paying his share of all claims existing against the corporation and surrendering his policy or policies. * * *"

The by-laws of the corporation provide:

"Art. 6. Each member of said company shall pay a pro rata share to said company within thirty days after being notified of the same by the secretary of such loss or damage, and the amount to be paid, caused by fire or lightning sustained by any member thereof upon the property insured by said company, and of the expenses of the company, in such manner and at such times as the directors shall order. * * *"

"Art. 17. Any member of this company may withdraw at any time by paying his share of any and all amounts existing against said company and of the expenses of said company to date of withdrawal, by giving ten days' notice in writing to the secretary and surrendering his policy or policies. * * *"

The defendant, in making application to the company for the policies held by him, signed a writing in and by which he covenanted and agreed to pay his just and equitable proportion of all assessments made according to the by-laws of said association for the payment of losses by fire or lightning, and conducting the business of

said association.  Every person, upon signing an application for insurance and becoming insured in said company, thereby becomes a member thereof.  On surrendering his policy or policies he with-draws from the company and ceases to be a member thereof.  The payment by a member to the company of his share of all claims exist-ing against the company is a condition precedent to his right to have his policy or policies canceled, and to his withdrawal as a mem-ber of the company.  When a member of the company makes ap-plication to withdraw therefrom, it is necessary that there should be a settlement and adjustment between the company and such re-tiring member.  The share of the member in all claims against the company, whether for loss or damage by fire or for accrued expenses, is a matter of computation.  Assuming that such member is liable for prospective expenses of collecting an assessment for existing claims, a reasonable amount could be added therefor.  Sands v. Boutwell, 26 N. Y. 233.  The statute only provides for assessing members.  When a settlement and adjustment is in good faith made between the company and a member, and his policy or policies are canceled, he not only ceases to be a member of the company, but cannot be again assessed as such, nor compelled to pay any further claim for losses or expenses, unless the settlement and adjustment is set aside for fraud or mutual mistake.  Hyde v. Lynde, 4 N. Y. 387, was an action on a deposit note given contemporaneously with a policy of insurance by a mutual insurance company.  Before the expiration of the term of the policy the insured sold the property, and thereupon surrendered his policy, and the secretary of the com-pany canceled and surrendered the deposit note.  Suit was brought on an assessment which included defendant for losses which hap-pened between the making and giving up of the note in question, and which at the time the note was given up was being contested by the company.  The court say:

"Whether any losses or expenses have accrued prior to that time which have not been satisfied, and which the company has not got funds in hand to satisfy, and how much, if anything, ought to be paid by the person insured, are matters to be adjusted between him and the company before the note is given up.  When the parties have come to an agreement, and the policy and the note have been surrendered, the individual ceases to be a member of the company, and all right to make assessments or calls upon him or upon the note is at an end.  The settlement and surrender of securi-ties are acts authorized by law, and, like other lawful acts, they are binding upon both parties unless they can be impeached on the ground of fraud or mistake."

In Campbell v. Adams, 38 Barb. 132 (subsequently reversed on another point), which was an assessment made upon a premium note where the policy had been surrendered, the court say:

"The surrender of the policy by the defendant and its cancellation by the company dissolved the defendant's relation as a member of the company, and neither they nor their receiver had any further claim upon them, ex-cept for the unpaid balance of the assessment of December 31, 1855.  [Mis-take in amount paid.]  The note was part and parcel of the contract of insurance, and, with the policy, constituted the whole of the transaction. One part could not be canceled, and the other remain in full force, without the consent of both parties."

In Huntley v. Beecher, 30 Barb. 580, referring with approval to the case of Hyde v. Lynde, supra, the court say:

"The insured had aliened the insured property and had surrendered his policy, which had been accepted by the company, and the note was canceled and surrendered. It was held that he was no longer liable upon his note for losses, though they happened prior to the surrender of the policy, etc., in the absence of all fraud."

In Mills v. Stewart, 62 Barb. 458, the case of Hyde v. Lynde, supra, is referred to in confirmation of the statement, "yet it will not be pretended that a compromise made in good faith is not binding as well upon creditors as stockholders." The decision to the contrary in Sands v. Hill, 42 Barb. 651, was reversed in the court of appeals (see statement on page 19 of 55 N. Y.), and on the second trial the agreement canceling the note, even after a petition for the dissolution of the corporation had been filed, was held binding upon the company, and that the note was thereby discharged. The evidence herein clearly shows a full settlement and adjustment between the parties hereto, and, in the absence of any claim or proof of fraud or mistake, the verdict in favor of the defendant was right.

Judgment affirmed, with costs. All concur.